**DONG WING OTT and Dong Wing Han, Plaintiffs,**

v.

**Edward J. SHAUGHNESSY, District Director, Immigration and Naturalization Service, for the District of New York, Defendant.**

United States District Court
S. D. New York.
July 17, 1956.

Elmer Fried, New York City, for plaintiffs.

Paul W. Williams, U. S. Atty., S. D. New York, New York City, for defendant (Charles J. Hartenstine, Jr., Roy Babitt, New York City, of counsel).

THOMAS F. MURPHY, District Judge.

Plaintiffs move for an injunction restraining their deportation and defendant counters for summary judgment dismissing the complaint.

Plaintiffs are Chinese natives who arrived in the United States on April 25, 1952. They sought admission as United States citizens as the sons of a native born American citizen father and a legally resident alien mother. After hearings before a Board of Special Inquiry the plaintiffs were ordered excluded and deported from the United States. Thereafter, writs of habeas corpus issued on behalf of plaintiffs were dismissed and the order affirmed by the Court of Appeals. U. S. ex rel. Dong Witt Ott v. Shaughnessy, D.C., 116 F.Supp. 745, affirmed 2 Cir., 220 F.2d 537.

Meanwhile, commencing October, 1954, plaintiffs were released on bond from defendant's custody and are still free of such custody and actually working in the City of New York. The validity of the order of deportation insofar as the

question of plaintiffs' citizenship is concerned is not in issue. The present suit arises because of plaintiff's application for a stay of deportation to China based upon the claim that they would be subject to physical persecution if deported to China, relying on § 243(h) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1253(h). After first accepting the plaintiffs' application together with the required fee the defendant returned the fee and advised plaintiffs that their applications were denied on the ground that they were not eligible to apply since they were "excluded" aliens and were not "aliens within the United States." As a result of this denial plaintiffs instituted this action seeking a declaratory judgment and injunction compelling the defendant to receive the applications and to consider the applications on the merits pursuant to the procedure established in 8 C.F.R. § 243.-3(b) (2).

Whether or not the defendant rightly or wrongly refused to accept the plaintiffs' applications for the relief provided in § 243(h) turns on the subsidiary question whether the relief provided for in that section is available to aliens who are in the excluded class.

Section 243(h) is part of Title 2, Chapter 5, of the Immigration and Nationality Act of 1952, entitled "Deportation; Adjustment of Status" and provides:

> "(h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason."

In 1925 Mr. Justice Holmes, writing for the full bench, held in Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585, that an alien was not dwelling within the United States for the purposes of naturalization even though she was in fact actually living with her father in New York City for a period of nine years because in law she was excluded at the border and she had never legally entered the country and, therefore, could not be dwelling within its boundaries.

Petitioners argue that the words of the statute should be construed literally and these aliens accorded the benefits that Congress has legislated. The identical issue has been decided adversely to petitioners in Jew Sing v. Barber, 9 Cir., 1954, 215 F.2d 906. In that case the Supreme Court granted certiorari, 1955, 348 U.S. 910, 75 S.Ct. 296, 99 L.Ed. 714, which is some indication that at least four of the Justices felt the case merited review. However, the case became moot, 1955, 350 U.S. 898, 76 S.Ct. 175, and we are left with no Supreme Court ruling that is counter to Kaplan v. Tod, recently cited with approval in Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 213, 73 S.Ct. 625, 97 L.Ed. 956.

In any event it would appear that Congress could not have intended to provide excluded aliens with the right to apply to the Attorney General for a stay because of fear of physical persecution if returned to the country from whence they came since it would open the doors to every stowaway and other non-admissible alien who was halted at our borders and clog the administrative facilities of the Immigration and Naturalization Service out of all proportion. Congress must have had concern only with those resident aliens who were deportable and not for the host of unfortunates who seek asylum here without first obtaining validated visas or permission of some kind. Cf. U. S. ex rel. Pantano v. Corsi, 2 Cir., 1933, 65 F.2d 322; U. S. ex rel. Camezon v. District Director of Immigration and Naturalization, D.C.S.D.N.Y. 1952, 105 F.Supp. 32.

Accordingly, defendant was quite correct in denying the applications and returning the fee since the petitioners were not within the United States as the statute required and the complaint should be dismissed.