UNITED STATES of America ex rel. LUE CHOW YEE and Lue Chow Lon, Relators,

v.

Edward J. SHAUGHNESSY, as District Director of the Immigration and Naturalization Service of the United States, Department of Justice, for the District of New York, or such person, if any, who might have said relators in custody, Respondent.

United States District Court
S. D. New York.
Nov. 15, 1956.

Spar, Schlem & Burroughs, New York City, for relators.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (Roy Babitt, Sp. Asst. U. S. Atty., and Gen. Atty., Immigration and Naturalization Service, New York City, of counsel), for respondent.

IRVING R. KAUFMAN, District Judge.

Relators Lue Chow Yee and Lue Chow Lon are citizens of China, both of whom sought entry into the United States upon their arrival from China on May 20, 1949, at San Francisco, California. They were held for a Board of Special Inquiry on their claim that they sought entry into the United States as American citizens in possession of travel documents issued by the American Consul in Canton, China. Hearings were held before the Board of Special Inquiry which ordered them excluded in May of 1949. The hearings were reopened subsequently and their application for entry was denied and they were held excludable from the United States. This determination was affirmed by the Commissioner on March 31, 1950. Both relators were released on parole in March of 1950 under Immigration and Naturalization Service bonds.

In November 1950 relators were called upon to surrender for return to China under the outstanding order of exclusion.

Upon receiving such notice, they instituted an action in the United States District Court, for the Southern District of New York, pursuant to 8 U.S.C. § 903,* for a declaratory judgment declaring them to be citizens. The notice of surrender was then cancelled.

The action was tried by this Court and in a decision Lue Chow Kon v. Brownell, 122 F.Supp. 370, the complaint was dismissed on the ground that the relators had failed to prove that they were entitled to admission as citizens. More specifically, the relators contended in that action that they with one Lue Chow Kon were brothers and the children of one Lue Don Wing, a naturalized citizen of the United States. This Court held after a careful analysis of the evidence adduced at the trial that they had failed to establish their contentions and furthermore that blood examinations had established by scientific analysis that they could not be the children of Lue Don Wing. An appeal was taken to the Court of Appeals for the Second Circuit reported at 220 F.2d 187, which affirmed the decision of this Court.

Subsequently, in March 1956, relators were called upon to surrender for deportation to China under the exclusion order. Thereupon, they made application for relief under Section 243(h) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1253(h), wherein they sought the discretionary relief of withholding of deportation on the ground that they would be subjected to physical persecution upon their return to China. No hearing was afforded to the relators, it being the contention of the government that they were not entitled to the relief afforded by Section 243(h) because they were excludable aliens. On October 22, 1956, relators were advised that they should surrender for deportation under the exclusion order. Thereupon the instant proceeding was commenced. Among other things, relators in their petition have asked leave to establish de novo that they are citizens and nationals of the United States. However, upon the oral argument on this writ, counsel advised the Court that he was abandoning that claim for relief.

The relators continue to press, however, their claim for relief on the ground that they are entitled to a hearing under Section 243(h) of the Immigration and Nationality Act of 1952 asserting that they would be subject to physical persecution if deported to the mainland of China. Section 243(h) of the Immigration and Nationality Act of 1952 provides:

"The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason."

The relators' contention that since they were paroled into the United States under an immigration bond they are to be considered as aliens "within the United States", is contrary to the view taken by all reported authorities on this subject. The authorities seem to be well settled that parole into the United States of an excludable alien or mere physical presence in the United States during an exclusion proceeding does not constitute an entry. Kaplan v. Tod, 1925, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585; United States ex rel. Pantano v. Corsi, 2 Cir., 1933, 65 F.2d 322; Jew Sing v. Barber, 9 Cir., 1954, 215 F.2d 906, certiorari granted 1955, 348 U.S. 910, 75 S.Ct. 296, and subsequently dismissed, 1955, 350 U.S. 898, 76 S.Ct. 175, when the case became moot. See Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 213, 73 S.Ct. 625, 97 L.Ed. 956; cf. United States ex rel. Camezon v. District Director of Immigration & Naturalization, D.C.S.D.N.Y.1952, 105 F.Supp. 32. Dong Wing Ott v. Shaughnessy, D.C.S.D.N.Y.1956, 142 F.Supp. 379 and the Jew Sing case, supra, specifically rejected the interpretation of the 1952 Act

---

* Now 8 U.S.C.A. § 1503.

advocated by the relators in the instant case.

The difficulty encountered by the relators arose from their refusal to recognize the distinction between a deportable alien and an excluded alien and by the further fact that the word "deportation" is frequently used loosely to describe the physical departure of an alien from the United States under both a deportation order and an exclusion order. It is clear that Congress did not intend to depart from the rationale of the Kaplan case for in the Immigration and Nationality Act of 1952 it specifically provided as follows in Section 212(d) (5), 8 U.S.C.A. § 1182(d) (5):

"The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

In short, it is the position of the relators that this Court should disregard the history of the statute in point, the congressional intention [1] and the holdings of the Supreme Court as well because generosity has been ignored in establishing the controlling principle. I do not assume to pass judgment upon the wisdom of the legislature and the highest court of the land. Justice Cardozo stated the guiding principle so well in his "The Nature of the Judicial Process":

"The Judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence." (p. 141).

Accordingly, the petition of the relators must be dismissed. So ordered.

---

1.  See House Report No. 1365, February 14, 1952, reprinted in 2 U.S.Code Cong. and Adm.News, 1952, pp. 1653, 1706.